IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| SHELLY LAMB ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. |
| ) | |
| ) | |
| KANSAS DEPARTMENT OF CORRECTIONS ) | |
| ) | REQUEST FOR JURY TRIAL |
| Defendant. ) | |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Shelly Lamb ("Plaintiff") and for her Complaint for Damages against Defendant Hutchinson Correctional Facility ("Defendant"), and alleges and states as follows:

### Parties and Jurisdiction

1. Plaintiff is a citizen of the United States, who at all times relevant to this Complaint, resided in Reno County, Kansas.

2. Plaintiff is and was, at all times relevant to this Complaint, an employee of Defendant at Defendant's facility in Hutchinson, Reno County, Kansas within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e(f) et seq. ("Title VII").

3. Defendant continuously operates the facility where Plaintiff was employed at 500 S. Reformatory Road, Hutchinson, Reno County, Kansas.

4. At all times pertinent to this Complaint for Damages, Defendant was an employer within the meaning of Title VII.

5. All counts in this Complaint are brought under Title VII, a federal statute.

1

6. Some, if not all, of the alleged unlawful practices took place in the State of Kansas, within the territory of the District of Kansas.

7. Jurisdiction and venue are proper in the District of Kansas pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1391.

## Administrative Procedure and Procedural Posture

8. On or about February 9, 2023, Plaintiff timely filed a formal Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging sex discrimination and retaliation as the bases for her claims.

9. On or about November 14, 2023, United States Justice Department issued to Plaintiff a Notice of Right to Sue. A copy of the Notice of Right to Sue is attached as Exhibit A and incorporated by reference herein.

10. This suit is filed within 90 days of the issuance of the Notice of Right to Sue.

11. Plaintiff has fully complied with all administrative prerequisites before filing this action.

## General Allegations Common to All Counts

12. Plaintiff was employed by Defendant as a Corrections Counselor from in or about March of 2008 until her promotion in or about May of 2014 to Unit Team Supervisor.

13. Plaintiff maintained the Unit Team supervisor position until she was constructively dismissed from her employment on or about August 5, 2022.

14. Plaintiff is a transgender woman.

15. Plaintiff is a member of the protected class of "sex."

16. Plaintiff informed Defendant that she was transgender and transitioning to female in or around the beginning of October 2021.

17. Prior to transitioning, Plaintiff never had issues with Defendant's management or Human Resources department while working for Defendant as a male.

18. On or about October 8, 2022, Plaintiff met with Human Resources Assistance Director Heidi Chiles regarding Plaintiff's gender transition.

19. Chiles informed Plaintiff she could not wear a hair piece, make up, nail polish, or women's clothing to work.

20. Chiles also explained Defendant would not require its employees to call Plaintiff by her chosen name or female pronouns.

21. Plaintiff learned from Chiles that Defendant would not change her name and sex in their database until Plaintiff obtained a new driver's license reflecting the changed information.

22. Further, during this meeting Chiles implied that being a male was a bona fide occupational qualification for Plaintiff's position.

23. Other cisgender female employees held the position of Unit Team Supervisor during Plaintiff's employment with Defendant.

24. Chiles discriminated against Plaintiff by denying her the opportunity to present as a woman by citing a gender requirement for Plaintiff's position that was not real.

25. Plaintiff discussed her work environment with a lawyer and learned of her right to transition and present as a woman at work, regardless of what Chiles told her.

26. Upon learning her rights, Plaintiff wrote a letter, attached as Exhibit B to the facility's Human Resources Director Christina Peach, Warden Dan Schnurr, Kansas Department of Corrections Human Resources Director Jan Clausing, and D Cellhouse Unit Team Manager Sarah Roach.

27. Plaintiff explained her legal rights as a transgender woman in her letter.

28. Plaintiff informed all of those addressed in the letter that she would continue to present at work in a feminine way that was in all ways consistent with the dress requirements of cisgender female employees, and which otherwise aligned with her gender identity.

29. Plaintiff also warned those addressed in the letter that if Defendant persisted in requiring Plaintiff to hide her gender identity and remain "closeted," she would pursue legal remedies to enforce her rights.

30. After sending this letter Plaintiff was again informed by Peach that Defendant would not use her preferred name until Plaintiff obtained a court ordered name change.

31. Although Plaintiff informed Peach that Kansas recognizes a common law name change, Peach refused to allow Plaintiff's name change in Defendant records.

32. Peach also told Plaintiff that she was not allowed to use the women's restroom on Defendant's property.

33. Starting in or around October 2021 until Plaintiff's constructive dismissal in August 2022, Plaintiff avoided using any of Defendants restrooms due to fears of physical violence if Plaintiff used the men's restroom, and because she had been threatened with discipline if she used the women's restroom.

34. Plaintiff suffered great distress, anxiety, depression, embarrassment, and humiliation because Defendant refused to accept her gender transition and refused to accommodate her in using the women's restrooms.

35. Upon information and belief, Peach refused to allow Plaintiff to use the women's restroom because Peach wanted to create a hostile environment which would induce Plaintiff to quit her employment with Defendant.

36. In January of 2022, Plaintiff obtained a legal name change.

4

37. Plaintiff immediately informed Defendant and asked that her name be changed in their databases.

38. Defendant refused to change the records for two months.

39. Finally in March of 2022, Plaintiff contacted Defendant's Human Resources department and requested the change again.

40. Plaintiff had to persist in her follow up before Defendant finally changed her name in its database.

41. Upon information and belief, Defendant purposefully delayed changing Plaintiff's name in their databases to slow down and hinder her ability to transition at work.

42. Between October 2021 and August 5, 2022, Plaintiff experienced regular harassment from other employees who refused to use her correct new name and female pronouns and who persisted in using her old male name and male pronouns.

43. Plaintiff complained about the harassing behavior, but Defendant refused to discipline the offending employees or to take any type of corrective action to protect Plaintiff from her coworkers' discrimination.

44. Prior to coming out as transgender in October of 2021, Plaintiff supervised other counseling staff and carried her own caseload.

45. Following Plaintiff's gender transition, Defendant changed Plaintiff's job responsibilities.

46. None of the other Team Unit Supervisors' duties were changed like Plaintiffs.

47. Defendant removed Plaintiff's subordinates and reassigned them to other Team Unit Supervisors.

48. Defendant took away all of Plaintiff's counseling cases.

49. Thereafter, Plaintiff's duties consisted solely of monitoring employee COVID information which had nothing to do with Plaintiff's job description.

50. Upon information and belief, Defendant took away Plaintiff's job responsibilities because they did not want a transgender female in a position of power and Defendant wanted to make her work experience as unpleasant as possible.

51. Prior to transitioning, Plaintiff had a standard office near her coworkers.

52. After transitioning, Plaintiff was moved to a basement office.

53. This basement office had been a supply closet prior to Plaintiff's transition.

54. No one other than Plaintiff used that office, which had been converted into an office specifically for Plaintiff.

55. After the office move, Plaintiff was isolated and received little to no contact from any of Defendant's staff.

56. Upon information and belief, Defendant moved Plaintiff to a different part of the building to isolate her from other staff in an attempt to induce Plaintiff to resign.

57. On or about April 20, 2022, Defendant moved Plaintiff's office yet again from the basement to a portion of the facility that was otherwise closed and unused.

58. This portion of the facility did not house any other employees and did not have any air conditioning.

59. From April to the end of Plaintiff's employment, no other employee was asked to work in the non-air-conditioned part of the facility.

60. Plaintiff submitted numerous work requests to have the air conditioning fixed.

61. Although Plaintiff worked in this office during the hottest part of the year, Defendant never fixed the air conditioning.

62. Plaintiff spent several days in her new office where she was forced to endure temperatures of 80 degrees or higher.

63. This made it difficult for Plaintiff to conduct any work and was extremely uncomfortable.

64. Upon information and belief, Defendant moved Plaintiff to this unconditioned office without any intentions of making it a habitable office for Plaintiff to work in.

65. After transitioning and presenting as female at Defendant's facility, Plaintiff was cat called and hazed by inmates on multiple occasions.

66. Other employees of Defendant witnessed the hazing and catcalling but never disciplined the inmates for their actions.

67. It is not uncommon for women to be catcalled and/or hazed by inmates while working for Defendant.

68. However, any time a cisgender female employee was harassed by an inmate, Defendant's other employees quickly and decisively responded to reprimand the offending inmate and stop the harassment.

69. Plaintiff is the only female employee on whose behalf Defendant's other employees refused to intervene and discipline inmates for inappropriate behavior.

70. Plaintiff was subjected to disparate treatment by her coworkers, supervisors, and inmates, and was constructively dismissed from her employment by Defendant because of her sex.

71. Plaintiff has also been subjected to retaliation by her supervisors and Human Resources department staff because she opposed the illegal sex discrimination perpetrated by Defendant and its other employees against her.

72. Plaintiff's supervisors condoned and participated in the discrimination and retaliation against Plaintiff in addition to acquiescing in the discrimination by coworkers and inmates against Plaintiff.

## COUNT I – TITLE VII, SEX DISCRIMINATION

73. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in all preceding paragraphs.

74. Plaintiff is a transgender woman and member of the protected class of sex.

75. Plaintiff was subjected to discrimination because of her sex at the hands of Defendant and/or Defendant's employees, agents, and subordinates, in that she was singled out for disparate treatment, and treated less favorably than non-transgender employees by Defendant both in day-to-day interactions with her coworkers and superiors and within the system as a whole.

76. Plaintiff's sex and gender identity were the motivating factors for Defendant's discrimination against Plaintiff.

77. Plaintiff did not have any issues working in Defendant's facilities for seven years before she transitioned; however, as soon as Plaintiff announced to Defendant her gender change, they started to mistreat her.

78. By taking no action to stop its employees from discriminating against Plaintiff, Defendant ratified, authorized, and/or condoned its employees' conduct.

79. Defendant, through its agents, knew of the discrimination and failed to take appropriate action.

80. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

81. As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, emotional distress, mental anguish, pain and suffering, and related compensatory damages.

82. By failing to take prompt and effective remedial action, Defendant in effect condoned, ratified, and/or authorized the discrimination against Plaintiff.

83. As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter them and other companies from the conduct in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against the Defendant for economic damages, including, but not limited to back pay, lost/denied benefits and front pay, injunctive relief, compensatory damages, punitive damages, for reasonable attorney fees and costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

## COUNT II – TITLE VII, RETALIATION

84. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in all preceding paragraphs.

85. Plaintiff engaged in protected activity within the scope of Title VII when she wrote a formal letter to the Human Resources department and supervisors.

86. Plaintiff was subjected to retaliation when Defendant refused to correct or otherwise put a stop to the discriminatory treatment of Plaintiff at the hands of Defendant's employees, agents, and subordinates.

87. Defendant was informed of the law regarding Plaintiff's transition and right to present as female but still restricted her ability to do so as much as possible.

88. Plaintiff's complaints were a motivating factor for Defendant's retaliation against Plaintiff.

89. By taking no action to stop its employees from retaliating against Plaintiff, Defendant ratified, authorized, and/or condoned its employees' conduct.

90. Defendant, through its agents, knew of the retaliation and failed to take appropriate action.

91. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

92. As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, emotional distress, mental anguish, pain and suffering, and related compensatory damages.

93. By failing to take prompt and effective remedial action, Defendant in effect condoned, ratified, and/or authorized the retaliation against Plaintiff.

94. As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter them and other companies from the conduct in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against the Defendant for economic damages, including, but not limited to back pay, lost/denied benefits and front pay, injunctive relief, compensatory damages, punitive damages, for reasonable attorney

fees and costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

## Demand for Jury Trial and Designation of Place of Trial

Plaintiff requests a trial by jury, in Wichita, Kansas, on all counts and allegations of wrongful conduct alleged in this Complaint.

Respectfully Submitted,

MISSOURI KANSAS QUEER LAW

/s/ *Madeline Johnson*
Mary Madeline Johnson, D. Kan. # 77985
220 Main Street, Suite 201
Platte City, Missouri 64079
Telephone: (816) 607-1836
Email: madeline@mokanqueerlaw.com

ATTORNEY FOR PLAINTIFF