**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| SHELLY LAMB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 24-2030-JAR-TJJ |
| | ) | |
| KANSAS DEPARTMENT OF CORRECTIONS, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION**

**OF DEFENDANT'S MOTION TO DISMISS**

COMES NOW, Plaintiff Shelly Lamb, by and through undersigned counsel, and submits this Memorandum in Opposition of Defendant's Motion for Summary Judgement.

## I. INTRODUCTION.

Plaintiff, pursuant to Fed. R. Civ. P. 56, opposes Defendant's Motion for Summary Judgement. There remain genuine issues of material fact on all of Plaintiff's claims and she should be permitted to proceed on all of her claims. Plaintiffs Suggestions in Opposition to Defendant's Motion for Summary Judgement are supported by the pleadings and attached Exhibits 1 and 2.

## II. CONTROVERTED FACTS FROM DEFENDANT'S "STATEMENT OF UNCONTROVERTED FACTS."

5. Plaintiff controverts paragraph 5 of Defendant's "Statement of Uncontroverted Facts", wherein Defendant stated, "On October 8, 2021, Plaintiff had a brief phone conversation with Heidi Chiles, the Assistant Director of Human Resources at HCF, where they discussed what specific makeup, nail polish and clothing Plaintiff was able to wear during her transition."

Plaintiff was told she would **not** be allowed to wear a wig, makeup, or women's clothes during this phone call with Heidi Chiles and that she was not allowed to do so in the workplace until she was "legally" a woman. Exhibit 1, Defendant's Excerpts of Plaintiff's Deposition, 21:10 to 24:25.

12. Plaintiff controverts paragraph 12 of Defendant's "Statement of Uncontroverted Facts", wherein Defendant stated, "Ms. Dedid (sic) not threaten Plaintiff with any type of discipline if she used the women's restrooms at HCF."

Plaintiff testified Christina peach never directly threatened her with discipline for using the women's restrooms but testified that Peach ordered her not to use the women's restrooms and there was implied discipline for failure to follow an order. *Id.,* 36:22 to 37:4.

19. Plaintiff controverts paragraph 19 of Defendant's "Statement of Uncontroverted Facts", wherein Defendant stated, "Plaintiff does not have any evidence that she was treated differently than any other employee in the application of the name change policy."

Plaintiff testified at her deposition that another employee named "Suzy" Kilmer, a non-transgender female employee, was allowed to use her preferred name of Suzy instead of her "legal" name in all communications, whereas Plaintiff was ordered to continue using the name of Michael in all communications over her objections. *Id.,* 48:21 to 50:24

## III. ADDITIONAL MATERIAL FACTS RELIED ON BY PLAINTIFF.

### Background

P1. Defendant instructed Plaintiff she was not allowed to wear makeup, female clothing, use a female name or preferred pronouns of "she/her," or to acknowledge Plaintiff as a transgender

woman prior to Plaintiff engaging an attorney to advise her of her legal rights. *Id.,* ; Exhibit 2, October 10, 2021 Letter from Plaintiff to Christina Peach.

P2. Defendant did not relent in its insistence that Plaintiff could not present as female at work until after Plaintiff informed Defendant she had consulted with an attorney regarding her legal rights. *Id.*

P3. Heidi Chiles attempted to convince Plaintiff that being male was a bona fide occupational requirement for her employment, which meant if she could not transition to female and keep her job. Exhibit 1, 41:14 to 44:12; Exhibit 2.

P4. Heidi Chiles directly told Plaintiff she cannot just transition or appear at work as female alleging she had to first obtain a legal finding that she is female. Exhibit 1, 21:16 to 22:17; 25:17-22.

P5. Defendant instructed Plaintiff she could not use her preferred name and pronouns in her email signature block. *Id.,* 45:18 to 46:17; 46:24 to 47:6.

P6. Coworkers continued to use Plaintiff's old male name and pronouns through the remainder of her employment until she eventually resigned. *Id.,* 61:1 to 63:7.

## IIII. LEGAL STANDARD

When considering summary judgment under Fed.R.Civ.P. 56, the Court must review the facts in the light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from the facts. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). Summary judgment is only appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The moving party's right to summary judgment must be established through a *prima facie* showing that it is entitled to summary judgment based upon the existence of undisputed facts which support its right to judgment as a matter of law. *Id.,* at 323.

Presuming, *arguendo*, that a defendant has met the requirements of Fed.R.Civ.P. 56, then a plaintiff's claims are traditionally analyzed following the three-step burden-shifting process as outlined in *McDonnell Douglas v. Green,* 411 U.S. 792 (1973). RSMo. § 213.101.3. Following the aforesaid rubric, a plaintiff must first make a *prima facie* case, thus shifting the burden to the defendant to produce a legitimate, non-retaliatory and/or non-discriminatory reason for its negative employment action, before shifting the burden back to the plaintiff to adduce sufficient evidence supporting the notion that the defendant's stated reason for its actions is mere pretext. *See generally, McDonnell Douglas v. Green,* 411 U.S. 792 (1973). However, when a Plaintiff is able to make a prima facie case based on direct evidence, the court need not look to an alleged non-discriminatory reason or to the third step of whether a plaintiff can articulate facts that could lead to an inference that the defendant's stated reason is mere pretext. *Ames v. Ohio Dep't. of Youth Servs.,* 605 U.S. 303, 310-11 (2025). The facts necessary to support prima facie proof will vary from case to case. *Id.,* at 311. Courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (U.S. 2014).

## IV. ARGUMENT

### A. Plaintiff has presented sufficient *direct* evidence showing a genuine dispute of material facts such that a jury could find in her favor.

Among Defendant's Statement of Uncontroverted Facts ("DSOF"), Defendant's facts as controverted by Plaintiff, and Plaintiff's Statement of Additional Material Facts ("PAMF"), there

are several outcome-determinative facts that, when cast in a light most favorable to Plaintiff, show summary judgment to be an inappropriate tool in the present case. Defendant directly discriminated against Plaintiff by telling her she would not be permitted to wear a wig, makeup, or dress as a woman in the workplace (PAMF P1, P4), by insinuating being male was a bona fide occupational qualification (PAMF P3, by refusing to allow her to use her preferred female name (PAMF P5; DSOF 12 as controverted by Plaintiff), and by directing her not to use the women's restrooms (DSOF 5). Defendant did not relent in persisting that Plaintiff was not allowed to transition in the workplace until after Plaintiff consulted legal counsel and crafted a letter to Christina Peach informing Defendant she had consulted counsel and that she intended to enforce her rights (PAMF P2). Even then, there is no evidence that Defendant changed its position, merely that it begrudgingly acquiesced and did not discipline Plaintiff for "breaking the rules." Additionally, Plaintiff continued to suffer from mistreatment at the hands of her coworkers until she eventually resigned in July 2022 (PAMF P6; DSOF 63, 64, 65).

It is at this point under the *McDonnell Douglas* rubric that the defendant would normally bear the burden of producing a non-discriminatory reason for its conduct. *Ames v. Ohio Dep't. of Youth Servs.,* 605 U.S. at 309. Defendant cannot do so in the present case because it directly discriminated against Plaintiff by attempting to put a halt to her transition and prohibit her from appearing as female in the workplace (PAMF P1 – P6). Defendant persisted until Plaintiff informed Defendant of her intent to enforce her rights to the fullest. (PAMF P2). There simply is no non-discriminatory reason for Defendant's actions. At best, Defendant's position can be characterized as minimization of its discrimination because it relented somewhat after Plaintiff informed Defendant she had consulted with an attorney and intended to enforce her rights. The problem for Defendant is that Title VII does not differentiate between big discrimination and

little discrimination. *Muldrow v. City of St. Louis,* 601 U.S. 346, 355 (2024). Further, when Defendant discriminated against Plaintiff because she came out as transgender, it did so directly because of Plaintiff's sex. *Bostock v. Clayton Cty.,* 590 U.S. 644, 652 (2020) (holding it is impossible to discriminate against a homosexual or transgender person without considering such person's biological sex.). Any different treatment of a Plaintiff because of their gender identity (sometimes referred to in legal contexts as "transgender status") thus constitutes illegal sex discrimination. *Id. See also, Muldrow,* at 354. Defendant's discrimination ultimately caused Plaintiff harm in the form of emotional distress, for which she may recover, and her case must proceed to trial.

Defendant spends the majority of its brief minimizing its actions, claiming Plaintiff was ultimately not barred from wearing makeup, a wig, feminine clothing, or ultimately presenting as female at work. It also argues that Plaintiff was not denied access to "a" bathroom, glossing over the fact it denied Plaintiff access to the women's restrooms. It also argues that it changed Plaintiff's name in the system upon proof Plaintiff's presentation of proof of a court ordered name change. Defendant's suggestions in support mention nothing of the months Plaintiff was forced to endure repeated use of her old "dead" name, listen to coworkers continue to refer to her as male, or to continue wearing a badge and use email credentials that did not match her gender identity. Defendant makes no mention of the emotional damage, humiliation, degradation, embarrassment, and distress it put Plaintiff through on a daily basis following her transition. Defendant made no effort to even tolerate Plaintiff's transition and instead attempted to raise hurdles for her at every possible step. In so doing, Defendant displayed blatant disdain for Plaintiff and her rights. Plaintiff has clearly established a prima facie case of sex discrimination and Defendant's motion for summary judgment must be denied.

Defendant argues that when Plaintiff came out as a transwoman, Ms. Chiles had a phone call to explain to Plaintiff cosmetic products she could wear. However, the extent of that discussion is not disclosed by Defendant. They fail to rebut Plaintiff's claim that she was told not to wear makeup or a wig. This is clearly a genuine issue of material fact that is not resolved in the record.

Plaintiff's letter regarding her rights as a transwoman, given to Defendant, show a reason for Defendant to retaliate against Plaintiff. Defendant was put on notice that they would not be able to discriminate against Plaintiff in her appearance. Plaintiff continued to professionally present as a woman while at work, and Defendant knew they could not attempt to punish her for that, in fear of legal repercussions. However, they continued to retaliate against her by insisting Plaintiff produce a "legal" name change before they would allow her to use her preferred name, and insisted she obtain legal status as a woman before she would be allowed to transition to female and present as such in the workplace.

**B. Plaintiff was damaged and may recover consequential damages for emotional distress as a victim of illegal discrimination.**

Title VII authorizes Plaintiff to recover consequential damages for the humiliation and degradation suffered as the victim of illegal sex discrimination. 42 U.S.C. § 2000e *et seq.* Defendant, in its attempt to minimize its acts of discrimination, does not argue that Plaintiff suffered no damages as a result of Defendant's actions. Thus, Plaintiff, having suffered damages as a result of disparate treatment by her employer, may recover compensatory damages. *Id. See also, Muldrow,* at 354.

## V. CONCLUSION

The present case pivots around the allegations that Defendant discriminated against Plaintiff for her sex, and then consequently retaliated against Plaintiff when she submitted a letter complaining of that discrimination. Plaintiff has submitted evidence that clearly requires a jury to resolve the dispute. Summary judgment is inappropriate in this case and should not be granted. Plaintiff suffered illegal discrimination and retaliation at the hands of Defendant when Defendant directly opposed and attempted to prohibit Plaintiff from appearing at work as female. It then systematically continued to raise hurdles for Plaintiff to overcome over the course of at least four months while Plaintiff set about complying with Defendant's "legal" requirements before it would acknowledge her transition to female. It further acquiesced in the conduct of its employees who persisted in using Plaintiff's dead name and refer to Plaintiff as male for the duration of Plaintiff's employment. Defendant's Motion for Summary Judgment should be denied.

WHEREFORE, Plaintiff prays this Court deny Defendant's motion for summary judgment, and for any other further relief as the Court deems proper.

*I hereby certify that I did not use generative AI in the drafting of this document.

Respectfully Submitted,

MISSOURI KANSAS QUEER LAW

/s/ *Mary Madeline Johnson*

Mary Madeline Johnson, D.Kan. #77985
103 W. 26th Avenue, Suite 200
North Kansas City, Missouri 64116
Tel: (816) 607-1836
madeline@mokanqueerlaw.com

ATTORNEY FOR PETITIONER

**Certificate**

I hereby certify a true copy of the foregoing was served on all parties via the Court's electronic filing system this 12th day of December, 2025, on all parties of record.

*/s/ Mary Madeline Johnson*

Mary Madeline Johnson